UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| GEORGE W. BUFORD | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | 3:05-cv-352 |
| | ) | 3:01-cr-102 |
| | ) | *Chief Judge Curtis L. Collier* |
| UNITED STATES OF AMERICA | ) | |
| Respondent. | ) | |

## MEMORANDUM

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner George W. Buford, a/k/a Ya-Insaan Hetep ("Buford").[1] For the following reasons, Buford's motion to dismiss the prosecution will be **DENIED** (Case No. 3:05cv352, Court File No. 14), the § 2255 motion will be **DENIED** in its entirety, and this action will be **DISMISSED**. All other pending motions will be **DENIED** as **MOOT**.

**I.    STANDARD OF REVIEW**

The Court must vacate and set aside Buford's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, Buford "must show a

---

[1] In its opinion, the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") referred to Buford as Hetep. In filing his § 2255 motion, Buford chose to refer to himself as Buford and this court will do likewise.

'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that Buford is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II.  FACTUAL BACKGROUND

On direct appeal, the Sixth Circuit summarized Buford's convictions and sentence, as well as the appellate issues, as follows:

> Defendant-Appellant George Buford, a/k/a Ya-Insaan Hetep, a/k/a Sandman ("Hetep") robbed six convenience stores and fast food restaurants in the Knoxville, Tennessee area in June 1998. On February 20, 2002, Hetep was charged in a thirteen-count superceding [sic] indictment with six counts of armed robbery in violation of the Hobbs Act, 18 U.S.C. § 1951; six counts of using, carrying and brandishing a firearm in relation to the robberies in violation of 18 U.S.C. § 924(c); and one count of being an armed career criminal in possession of a firearm in violation of 18 U.S.C. § 922(g).
>
> Following a two-day trial, the jury returned a guilty verdict on all six Hobbs Act charges, four of the six § 924(c) offenses, and on the § 922(g) offense. Hetep was sentenced to 1,194 months imprisonment, five years supervised release, and $360 in restitution.
>
> On appeal, Hetep contends that the district court erred by allowing a witness to testify about a threat Hetep made to witnesses at a state court proceeding regarding the robberies, and that it erred by allowing a court security officer to accompany the witness to the defense table to identify him. He maintains that the cumulative effect of these evidentiary errors denied him a fair trial. For the reasons discussed herein, we affirm the judgment of conviction.

*United States v. Buford*, 106 Fed.Appx. 400, 401 (6th Cir. August 6, 2004).

In support of his § 2255 motion to vacate sentence, Buford alleges the following: (1) his transfer to federal custody violated the Interstate Agreement on Detainers Act; (2) the criminal statutes under which he was charged are not official U.S. statutes; (3) the district court lacked jurisdiction over him; (4) African-Americans were systemically excluded from the jury; (5) the prosecutor suborned perjury to prove the interstate commerce nexus; (6) witness Janie Hawkins lied in her testimony concerning the threats by Buford; (7) his sentence violates the holding of *United States v. Booker*, 543 U.S. 220 (2005); and (8) he received ineffective assistance of counsel. In a supplement to the § 2255 motion, Buford moves to dismiss his prosecution because it was based upon selective prosecution.

### III.     DISCUSSION

#### A.     Violation of Interstate Agreement on Detainers Act

Buford alleges that his transfer to federal custody from state custody violated the Interstate Agreement on Detainers Act (IAD) because, at the time, he had not been sentenced on the state charges for which he was in state custody. According to Buford, while he was confined in the Knox County Jail on pending state charges, the U.S. Marshals Service filed a detainer against him, in which it was erroneously alleged that he was a sentenced prisoner. Subsequent to service of the detainer, the U.S. Attorney had Buford brought into federal custody pursuant to a writ of habeas corpus *ad prosequendum*.

Buford relies on *United States v. Mauro*, 436 U.S. 340 (1978) for the proposition that "the United States is bound by the [Interstate Agreement on Detainers Act] when it activates its

3

provisions by filing a detainer against a state prisoner and then obtains his custody by means of a writ of habeas corpus *ad prosequendum*." *Id*. at 349. *See also United States v. Crozier*, 259 F.3d 503 (6th Cir. 2001).

> The Interstate Agreement is a compact entered into by forty-eight states, the United States, and the District of Columbia to establish procedures for resolution of one jurisdiction's outstanding charges against another jurisdiction's prisoner. A detainer "is simply a notice to prison authorities that charges are pending against an inmate elsewhere, requesting the custodian to notify the sender before releasing the inmate." The United States need not file a detainer in order to obtain custody over a state's prisoner. Thus, it is not necessarily bound by the Interstate Agreement on Detainers' requirements. If the United States chooses to file a detainer, however, the Agreement's requirements attach.

*Id*. at 513 (quoting *Ridgeway v. United States*, 558 F.2d 357, 360 (6th Cir. 1977)) (other citations omitted).

Buford notes that Article IV of the IAD refers to a prisoner "who is serving a term of imprisonment in any party State . . . ." 18 U.S.C. App. 2, § 2, Art. IV(a). He thus contends that, by filing a detainer against him when he had not begun to serve a state sentence, the government violated the IAD and therefore his sentence should be vacated. To the contrary, "the IAD is not triggered" in the case of a prisoner who has not yet entered into a term of imprisonment. *Jenkins v. United States*, 394 F.3d 407, 413 (6th Cir. 2005). *See also United States v. Jennings*, 40 Fed.Appx. 1, 2 (6th Cir. April 2, 2001) (Interstate Agreement on Detainers does not apply to pre-trial detainees); *Crum v. United States*, 1991 WL 239520 *1 (6th Cir. November 18, 1991) ("The IAD does not apply to pretrial detainees, but only to those serving sentences following a conviction."). Accordingly, Buford is not entitled to relief based upon an alleged violation of the IAD.

    **B.**    **Unofficial Criminal Statutes**

Buford alleges the criminal statutes under which he was charged are not official United States statutes because they each lack the required enacting clause. According to Buford, the Court lacked jurisdiction to render judgment, because the sections of the U.S. Code charged in the indictment do not have the Congressional enactment clause; he also claims that, because the code sections lacked authority, the judgments of conviction are facially void.

The Sixth Circuit, in *Goldsby v. United States*, No. 04-3340, 2005 WL 2572362 (6th Cir. October 12, 2005), rejected as frivolous a similar claim with respect to a conviction under Title 21 of the U.S. Code:

> Goldsby argues that since Congress has not enacted Title 21 into positive law, his conviction under 21 U.S.C. § 841 is invalid. As the district court noted, this claim is frivolous.
>
> Goldsby is referring to the fact that Congress has not approved the specific placement of the underlying legislation into Title 21 of the U.S. Code. However, this is by no means uncommon. . . .
>
> . . .
>
> Congress's failure to approve the specific placement of Title 21 does not affect the validity of the underlying legislation. As the Tenth Circuit has noted, "the fact that Title 21 has not yet been 'revised, codified, and enacted into positive law' in accordance with the legislative agenda noted in the preface to the United States Code does not render the substantive law it records a nullity." Thus, challenges on these grounds are frivolous.

*Id.*, 2005 WL 2572362 at \*\*7-8 (quoting *Wilson v. United States*, No. 90-6341, 1991 WL 216477 at \*1 (10th Cir. October 23, 1991)). Accordingly, Buford is not entitled to relief on this claim.

### C. Lack of Jurisdiction

Buford alleges that this court lacked jurisdiction to consider his criminal offenses. His claim is without merit. Title 18 U.S.C. § 3231 provides: "The district courts of the United States shall

5

have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  As the Seventh Circuit has noted:  "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts.  That's the beginning and the end of the 'jurisdictional' inquiry."  *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999).  *See also United States v. Titterington*, 374 F.3d 453 (6th Cir. 2004) ("The federal courts' subject-matter jurisdiction to hear federal criminal prosecutions comes from 18 U.S.C. 3231 ....").  Buford is not entitled to relief on this claim.

### D. Exclusion of African-Americans from the Jury

Buford alleges that, at the time of his trial, African-Americans were systemically excluded from jury duty.  Pursuant to the Sixth Amendment, a criminal defendant is entitled to a jury venire, from which the petit jury is drawn, that represents a fair cross section of the community.  *Taylor v. Louisiana*, 419 U.S. 522 (1975).  However, there is no requirement that the jury panel must accurately reflect the proportionate strength of every identifiable group:

> It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.  Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*Id*. at 538.

The Supreme Court has held that, in order to establish a Sixth Amendment violation, a defendant must establish the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
> (2) that the representation of this group in venires from which juries are selected is

> not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). Each of these three elements "must be established before the government is required to justify an infringing selection procedure." *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998).

African-Americans have been recognized as a distinctive group, *see, e.g., Lockhart v. McCree*, 476 U.S. 162, 175 (1986), and thus Buford could establish the first requirement. He has failed to put forth any facts, however, which would establish that the jury venire, from which his petit jury was chosen, did not represent a fair cross-section of the community nor has he shown that the jury selection procedure excluded African-Americans or was not racially neutral.

The Jury Plan for the Eastern District of Tennessee, which was in place at the time the venire was selected for Buford's trial, prohibited discrimination in the jury selection process and established race-neutral procedures for the selection of jurors. A similar challenge to this district's jury selection process was recently considered and rejected by the Sixth Circuit. *See United States v. Clark*, 112 Fed.Appx. 481, 486 (6th Cir. October 13, 2004), *vacated and remanded on other grounds*, 545 U.S. 1101 (2005). Accordingly, Buford has filed to demonstrate African-Americans are systemically excluded from jury service in this district.

### E.     Prosecutorial Misconduct

Buford alleges that Assistant U.S. Attorney Mary Aubry elicited testimony she knew to be false, in order to establish the interstate commerce nexus necessary for Buford's convictions under

the Hobbs Act. Buford refers to the testimony of the victims and other witnesses that the stores involved in the robberies were engaged in interstate commercial activity. According to Buford, the interstate commerce aspect of the activity ended once the goods were placed for sale in the stores and restaurants that he robbed.

In order to obtain a conviction under the Hobbs Act, the government must prove (1) interference with interstate commerce, and (2) the substantive criminal act, in this case armed robbery. *United States v. Turner*, 272 F.3d 380, 384 (6th Cir. 2001). To prove the interstate commerce nexus, the government only has to show that the criminal act had a *de minimis* effect on interstate commerce. *See United States v. Mills*, 204 F.3d 669, 671 (6th Cir. 2000) ("even a '*de minimis*' effect on interstate commerce will suffice" to support a Hobbs Act conviction); *United States v. Smith*, 182 F.3d 452, 456 (6th Cir. 1999) ("The proper standard for Hobbs Act convictions is the long-standing '*de minimis* effect on interstate commerce' standard.").

A showing of a *de minimis* effect on interstate commerce may be made by showing that the victim business purchased goods from outside the State of Tennessee. *See, e.g., United States v. Wang*, 222 F.3d 234, (6th Cir. 2000) (noting the "rather low threshold for determining whether robbery directed at a business establishment will give rise to federal criminal jurisdiction under § 1951"). In this case, Ms. Aubry elicited testimony with respect to each business' purchase of goods from outside the State of Tennessee for resale. Such testimony was proper for establishing the nexus of interstate commerce and thus Ms. Aubry's conduct did not constitute prosecutorial misconduct. Buford's claim in this regard lacks merit.

    **F.**    **Perjury by Witness Janie Hawkins**

Buford alleges Janie Hawkins lied when she testified Buford had threatened to kill her and other witnesses if they testified that Buford had robbed them. On direct appeal, Buford unsuccessfully challenged the admission of Ms. Hawkins' testimony as an abuse of the court's discretion.

> [E]vidence of Hetep's threats at trial was admissible to show consciousness of guilt. Such evidence does not raise an improper character inference because threats tend to show consciousness of guilt 'without any inference as to the character of the spoliator.' Thus, the district court did not violate Rule 404(b) by allowing Hawkins to testify about the threats. Additionally, the probative value of Hawkins's testimony was not outweighed by the danger of unfair prejudice.

*United States v. Buford*, 106 Fed.Appx. at 403 (quoting *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986)).

Buford's allegation that Hawkins lied on the stand was an issue resolved by the jury. "The credibility of witnesses is ordinarily for trial by the jury in the criminal trial. False evidence and perjury are matters that may be raised on the trial and on motions for a new trial, but not in habeas corpus, Section 2255, or other post-conviction petitions." *Hoffa v. United States*, 339 F. Supp. 388, 392 (E.D. Tenn. 1972), *aff'd*, 471 F.2d 391 (6th Cir. 1973). Accordingly, Buford is not entitled to relief on his claim of perjury.

### G. Booker

Buford alleges his sentence violates the holding of *United States v. Booker*, 543 U.S. 220 (2005). In *Booker*, the U.S. Supreme Court noted its holding should be applied "to all cases on direct review." 543 U.S. at 268. The Court did not state that the holding should be applied retroactively on collateral review of cases in which the judgment has become final. In fact, the Court quoted *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), for the proposition that "'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on

direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" *Id*. The Sixth Circuit has held *Booker* "does not apply retroactively in collateral proceedings." *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir.), *cert. denied*, 126 S. Ct. 199 (2005). Accordingly, Buford is not entitled to relief under *Booker*.

### H. Ineffective Assistance of Counsel

Buford alleges that he received ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Buford must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Buford specifically alleges that his attorneys failed to pursue the foregoing seven claims for relief. Since the Court has determined the foregoing claims lack merit, Buford's attorneys did not render ineffective assistance of counsel by failing to raise the claims. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel); *see also Mathews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993) (an attorney is not required to raise meritless issues on appeal); *Brunson v. Higgins*, 708 F.2d 1353,1356 (8th Cir.1983) ("The failure to anticipate a change in the law will not generally constitute ineffective assistance of counsel.") (citations omitted).

Buford also alleges that his attorneys should have argued that his criminal conduct was not national in scope or character, but rather local in origin. He relies on the Supreme Court decision in *United States v. Lopez*, 514 U.S. 549 (1995), for this proposition. The Hobbs Act, however, was not affected by the decision in *Lopez*. *See, e.g., United States v. Smith*, 182 F.3d 452, 456 (6th Cir. 1999) ("We join our sister circuits and hold that the *de minimis* standard for the interstate commerce effects of individual Hobbs Act violations survived *Lopez*."). Accordingly, Buford's attorneys did not render ineffective assistance of counsel by failing to argue a *Lopez* challenge to Buford's convictions under the Hobbs Act..

Finally, Buford alleges that counsel should have investigated his prior crimes in order to present to the court any mitigation factors with respect to his armed career criminal status. Buford does not state, however, what facts counsel should have discovered and presented to the court to challenge his status as an armed career criminal. A § 2255 movant has the burden of proving the substance of his allegations by a preponderance of the evidence and a district court is not required to hold an evidentiary hearing on the basis of mere conclusions. *See, e.g., Ashley v. United States*,

17 Fed. Appx. 306, 308 (6th Cir. 2001); *Tucker v. United States*, 423 F.2d 655, 656 (6th Cir. 1970); *United States v. Orlando*, 327 F.2d 185, 188 (6th Cir. 1964); *Malone v. United States*, 299 F.2d 254, 255 (6th Cir. 1962).

Based upon the foregoing, Buford has failed to demonstrate ineffective assistance of counsel under the standard established by the Supreme Court in *Strickland*.

I.   **Selective Prosecution**

In a motion to dismiss filed subsequent to the § 2255 motion (Court File No. 14), Buford challenges his conviction for being a felon in possession of a firearm based upon selective prosecution. According to Buford, Project Safe Neighborhoods is being applied disproportionately to African-Americans in the Eastern District of Tennessee, and that similarly situated defendants of other races are not being prosecuted under the same statute. Project Safe Neighborhoods is "a federal-state cooperative program aimed at reducing gun violence." *United States v. Mitchell*, 111 Fed.Appx. 826, 828 (6th Cir. 2004). Buford's claim of disparate treatment will not support a claim of selective prosecution.

> To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent. To establish discriminatory intent in a case alleging selective prosecution based on race, a claimant must show that the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted.

*United States v. Jones*, 159 F.3d 969, 976-77 (6th Cir. 2005) (internal citations omitted). In addition, to show discriminatory intent, Buford must produce some evidence specific to his own case that supports an inference that race played a part in the decision to prosecute him. *See McCleskey v. Kemp*, 481 U.S. 279, 292-92 (1987). Burford has failed to proffer any evidence of either discriminatory intent or discriminatory effect.

12

Moreover, Buford's allegation of selective prosecution is patently frivolous. He was convicted of four counts of using, carrying and brandishing a firearm during an armed robbery. A previously convicted felon, Buford was guilty of being a felon in possession of a firearm. His conviction had nothing to do with "Project Safe Neighborhood" and everything to do with his criminal conduct. Therefore, his motion to dismiss will be denied.

## IV. CONCLUSION

Buford is not entitled to relief under § 2255. His motion to dismiss the prosecution based upon selective prosecution (Court File No. 14) will be **DENIED** and his motion to vacate, set aside or correct sentence will be **DENIED** in its entirety. This action will be **DISMISSED**. All other pending motions will be **DENIED** as **MOOT**. In addition to the above, this court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** Buford leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Buford having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

An Order will enter**.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**